JOHN H. COSTELLO & others[1] *vs.* COMMISSIONER OF REVENUE.

Suffolk. January 9, 1984. — March 29, 1984.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Stipulation. *Taxation,* Income tax.

Taxpayers who acquired an interest in certain stock, the duration of which was to be measured by the life of a trust beneficiary, failed to establish, by stipulation or otherwise, the value of their interest and thus were not entitled to deduct from Part A State taxable income any portion of the instalment payments they had made for it. [568-571]

APPEAL from a decision of the Appellate Tax Board.

*Robert H. Goldman* for the taxpayers.

*H. Reed Witherby,* Assistant Attorney General, for the Commissioner of Revenue.

ABRAMS, J. The taxpayers appeal, pursuant to G. L. c. 58A, § 13, from a decision of the Appellate Tax Board (board), denying income tax abatements for the years 1976, 1977, and 1978.[2] The taxpayers had purchased the life interest in a trust for the benefit of Marguerite (Costello) Gavin, the widow of a deceased brother, Thomas Costello. The assets of the trust included shares in the Lowell Sun Publishing Company. The taxpayers also owned stock in the Lowell Sun Publishing Company independent of the trust. In consideration for the transfer of her life estate in the trust, the taxpayers each agreed to pay Marguerite Gavin $24,000 a year

---

[1] The others plaintiffs are Peggy E. Costello, wife of John H. Costello, and Clement C. Costello and Mauricette Costello, husband and wife. For each of the years, Peggy E. and John H. Costello filed joint returns. Clement C. and Mauricette Costello also filed joint returns for each of the years.

[2] The board's decision concerned six related appeals that were consolidated. The parties agree that the petitions had similar facts and raised identical issues of law.

for the remainder of her life. In each of the years at issue, the taxpayers received dividends from the Lowell Sun stock, a portion of which was derived from the trust shares and a portion of which was derived from their own shares. Each year the taxpayers deducted the payments of $24,000 each made to the beneficiary from the unearned dividend income reported on their State and Federal tax returns.

The Commissioner of Revenue (commissioner) audited the taxpayers' State returns and concluded that, although the payments to the beneficiary might be deductible from Federal income pursuant to 26 U.S.C. § 212 (1976), for "state income tax purposes there are no provisions allowing this expense deduction from gross dividend income." The commissioner's decision had the effect of denying a deduction of approximately $24,000 a year from Part A gross income.[3] The taxpayers filed a petition to the board under formal procedure, G. L. c. 62C, § 39, for abatement of the additional taxes, arguing that State law entitled them to deduct the payments to the beneficiary from the total amount of dividends received, thereby reducing Part A taxable income.

The board found that the taxpayers failed to establish "two essential, very basic facts . . . , i.e., the life of the asset and its value," and that the taxpayers' "agreement to pay $24,000 a year for the life of [the beneficiary] standing alone could not be the basis for amortization" of the asset. See G. L. c. 62, § 2 (d) (2), and 26 U.S.C. § 167 (1976). The taxpayers allege that the board erred in its finding because an attorney on behalf of the commissioner stipulated that they need not present evidence as to the life and value of the asset. We agree with the board that there was no evidence and no stipulation as to the

---

[3] "Massachusetts gross income is divided into two classes:· Part A gross income, which consists of dividends, interest, and net capital gain (with certain exceptions), G. L. c. 62, § 2 (b) (1); and Part B gross income, which is 'the remainder of the Massachusetts gross income.' G. L. c. 62, § 2 (b) (2). Part A taxable income and Part B taxable income are, in each instance, calculated by adjusting gross income for certain specified deductions and exemptions. Part A taxable income is taxed at [10.75%]; Part B taxable income is taxed at [5.375 %]." Kargman v. Commissioner of Revenue, 389 Mass. 784, 784-785 (1983). See G. L. c. 62, § 4, and St. 1975, c. 684, § 88.

life and value of the asset, that evidence of those facts was required, and that the burden of proof was on the taxpayers. Therefore, we affirm the decision of the board.

On appeal, the taxpayers claim that the record establishes the fact that there was a stipulation which would take the place of the needed proof. "If the agreed facts are submitted to the tribunal merely as evidence and in place of ordinary proof, . . . the case stands as does any other case . . . coming by appeal or report from the decision of the trial judge. . . . [A]n appeal from a decision on facts agreed as evidence is treated as raising the question of law whether on all the evidence the verdict or finding was warranted as matter of law. *Ingalls* v. *Hobbs*, 156 Mass. 348 [1892]. *Harmon* v. *Sweet*, 221 Mass. 587, 598 [1915], and cases cited." *Frati* v. *Jannini*, 226 Mass. 430, 432 (1917). *Cambridge* v. *Somerville*, 329 Mass. 658 (1953). See P.J. Liacos, Massachusetts Evidence, 14-16 (5th ed. 1981) ("Common Law Admissions").

In support of their claim that the board erred in ignoring a stipulation, the taxpayers refer to the portion of the transcript of the hearing reproduced in the margin.[4] An examination of the

---

[4] THE HEARING OFFICER: "Right. I understand that, but my question is from what I have here how do I know that in each case the amount which would have gone to Marguerite if she had not entered into this transfer is, in fact, more than twenty-four thousand.

"For an example, if there was no other stock in the newspaper owned by these gentlemen and if they received ten thousand dollars in dividends and deducted twenty-four thousand, there would be a minus fourteen to carry over to the General Motors and other dividends which I don't think you would deduct from the General Motors dividends. And from the evidence I have here how can I tell by looking at these exhibits later on that in each case the amount they received for what was more than what they paid for it."

COMMISSIONER'S COUNSEL: "Your Honor, I don't think that issue has been raised, and I'm not concerned with whether or not the amount of the payment exceeds the dividends that were received."

THE HEARING OFFICER: "This is what bothers me."

THE WITNESS: "I believe Mr. Sullivan who was the examining agent raised that question. I think we did answer it. There was excess paid each year. You can't tell by looking at these forms."

THE HEARING OFFICER: "If the department will stipulate that it isn't an added problem."

COMMISSIONER'S COUNSEL: "No, it isn't."

transcript indicates that the taxpayers had agreed to limit the issues in the cases to the "offset against gross dividends" theory (i.e., a deduction of the total yearly payment from Part A income). The taxpayers' counsel stated, "We say that when you carry over to the state return the figure for gross dividends, it carries with it the inherent offset which the federal cases recognize as inherent in this type of apparently unusual situation of the purchase of a life estate."

The scope of the stipulation is determined by the circumstances in which it is made and the nature of the proof required by the issues raised. A stipulation is not unlimited as to time, scope, or theory but must be interpreted in the context of the theory of the case. See *Usery* v. *Marquette Cement Mfg. Co.*, 568 F.2d 902, 907 (2d Cir. 1977). See also 9 J. Wigmore, Evidence § 2593, at 831 (Chadbourn rev. 1981) ("It would seem, having regard to the voluntary and contractual nature of the act, that the duration of its effect, no less than its scope, depends after all on the intent of the parties; that this implied intent may vary with the circumstances . . . ").

The stipulation set forth in the transcript was an agreement that the evidence would show that the taxpayers derived more income from the trust shares than they paid to the beneficiary. The stipulation was offered on the issue of the legality of the taxpayers' claim that they could deduct their payments to the beneficiary from their Part A income.

After the hearing, the taxpayers argued in a reply brief that the payments could be deducted from Part B gross income pursuant to 26 U.S.C. § 167 (1976), and G. L. c. 62, § 2 (*d*).[5] In asserting this claim, the taxpayers shifted their theory from the claim of straight deduction from Part A income to a theory of

---

THE HEARING OFFICER: "Fine. Again, I guess I expected to see a copy of the trust."

TAXPAYERS' COUNSEL: "It's not in dispute."

THE HEARING OFFICER: "So we'll cut all of that out."

[5] On appeal, the taxpayers concede that the payments are not deductible from Part A income but maintain that the payments are depreciable and may be deducted from Part B income. The board did not decide that issue, and we do not reach that issue.

depreciation under § 167 and consequently a deduction from Part B income. The taxpayers' new theory required proof of the life and value of the asset, facts which must be established if a reasonable allowance for depreciation is to be deducted from Part B income. See Federal Tax Regulations §§ 1.167 (a)-1 and 1.167 (*a*)-3 (1983). See also 4 J. Mertens, Federal Income Taxation § 23.17 (1980) (detailing elements that "must be known if 'a reasonable allowance' for depreciation is to be determined"; including date of acquisition of the property, cost, nature of the property; estimated useful life of the property; and salvage value; citing cases).[6] The board concluded that the stipulation relied on by the taxpayers could not be stretched to include evidence of the life and value of the asset. Because the taxpayers failed to prove these needed facts or to obtain a stipulation as to those facts, the board's determination that the taxpayers had not sustained their burden of proof is correct.

*Decision of the Appellate Tax*
*Board affirmed.*

---

[6]The record does not indicate that the taxpayers sought to reopen the hearing to explore this theory before the board issued its decision. Nor does the record reflect an attempt to reach a stipulation with the commissioner on the life and value of the asset prior to the board's decision.