SEWER COMMISSIONERS OF HINGHAM & another[1] *vs.*
MASSACHUSETTS WATER RESOURCES AUTHORITY.

Suffolk. March 5, 1987. — July 13, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Agreed statement of facts. *Hingham. Sewage Disposal.
Massachusetts Water Resources Authority.*

In an action by the town of Hingham seeking a declaration that a certain
vote of the Metropolitan District Commission (MDC) effectively admit-
ted the entire town as a member of the MDC's sewage disposal district
and thus the town was a member of the service area of the Massachusetts
Water Resources Authority, the judge correctly declared that only a
portion of the town was included in the district under contract with the
MDC, where no such contract, as required under G. L. c. 92, § 1, to
admit the remainder of the town, was ever prepared or executed. [460-
462]
A statute changing the name of a certain municipal sewage district did not
effectuate any enlargement of its territory. [462]
Statute 1984, c. 372, creating the Massachusetts Water Resources Authority
to assume the obligations of the Metropolitan District Commission
(MDC) in regard to water and sewer services, gave no entitlement to
the town of Hingham, in its entirety, to be included in the Authority's
service area, where only a part of the town was in a district under
contract with the MDC for disposal of sewage at the time the legislation
became effective. [462-463]

CIVIL ACTION commenced in the Superior Court Department
on September 11, 1985.

The case was heard by *Thomas R. Morse, Jr.*, J., on a
statement of evidence agreed to by the parties.

The Supreme Judicial Court granted a request for direct
appellate review.

*Stuart DeBard* for the plaintiffs.

*Marilyn L. Hotch (W. Gary Wilson* with her) for the defendant.

[1] The town of Hingham.

LIACOS, J. On September 11, 1985, the plaintiff town of Hingham and its sewer commissioners (Hingham) sought a declaratory judgment that the entire town of Hingham had been a member of the Metropolitan District Commission (MDC) and is now a member of the Massachusetts Water Resources Authority (Authority).[2] Specifically, Hingham sought a declaration that an October 11, 1979, vote of the MDC concluded a contract between Hingham and the MDC for admission of the entire town of Hingham as a full member of the MDC's sewage disposal district, the Metropolitan Sewerage District (MSD). There is no dispute that Hingham's northern section, the "North Sewer District of Hingham" (North Sewer District), has been a member of MSD since 1945.[3] Hingham sought further determinations with respect to its supplying, or not supplying, documents to the MDC, and the effect such actions or inactions might have had on the alleged contract. It also sought a declaration that the Authority is estopped from contending that the entire town of Hingham was not a member of MSD. Last, Hingham sought a declaration that St. 1980, c. 235, "An Act changing the name of the North Sewer District of the Town of Hingham to the Hingham Sewer District," should apply to St. 1984, c. 372, the Authority's enabling legislation, and thereby effect the admission of the entire town into the Authority sewer system, even in the absence of a contract.

In its answer, the Authority (a) denied that the southern part of Hingham had ever become a member of MSD, by contract

[2] Statute 1984, c. 372, created the Authority in December, 1984, to take over the sewer and waterworks system of the MDC. It also dissolved the Metropolitan Water District and the Metropolitan Sewer District of the MDC. Termed a "body politic and corporate and a public instrumentality," the Authority was placed within, but not subject to the supervision or control of, the Executive Office of Environmental Affairs. St. 1984, c. 372, § 3. Its mandate is "to operate regulate, finance, and improve the delivery of water and sewage collection, disposal and treatment systems and services, and to encourage conservation." St. 1984, c. 372, § 1.

[3] Both G. L. c. 92, § 1, repealed effective July 1, 1985, which governed the MDC, and St. 1984, c. 372, which created the Authority, include the North Sewer District among the entities for which sewer services must be provided.

or otherwise; and (b) denied that any action on the part of the MDC or the Authority could provide a basis for any contractual or estoppel claims by Hingham with respect to this matter.[4]

The parties agreed to, and submitted, a statement of evidence. The Authority moved for summary judgment. The judge issued a memorandum and order finding that a contract was required for Hingham to become a full member of MSD and that no such contract existed. He entered a declaratory judgment that only North Sewer District was a member of the MDC and may be a member of, and served by, the Authority. Hingham appealed, and we allowed its application for direct appellate review. We affirm.

The facts agreed to by the parties can be summarized as follows. Pursuant to St. 1945, c. 591, the territory comprising the North Sewer District, as defined in § 2, was added to MSD. A sewerage system was constructed in that area of Hingham and was included within the sewerage system of the MDC.[5] G. L. c. 92, § 1 (1984 ed.). Hingham's southern portion was permitted, under contract as a nonmember of MSD, to dispose of "septage" (waste from septic systems which are not connected to sewers) into MSD sewerage system from approximately 1975 through 1979.[6]

In 1979, the MDC advised Hingham that, after December of that year, the MDC system would admit no septic waste from Hingham's southern portion. Pursuant to St. 1945,

---

[4] The Authority also alleged that the question of Hingham's standing as a member of MSD had been presented in the Superior Court case of City of Quincy *vs.* Metropolitan District Commission and had been decided adversely to Hingham. The Authority does not, however, claim res judicata or collateral estoppel on the basis of this earlier case.

[5] Membership in the MDC's MSD afforded a right to tie local sewers within the members' boundaries into the MDC sewerage system. It also provided the right to dispose of septage from the septic systems of nonsewered residences within those boundaries into the MSD sewerage system.

[6] Between 1975 and 1978, the MDC permitted nonmembers to dispose of septage into MDC's sewerage system if and when a satisfactory contract was executed with MDC on behalf of the nonmember community.

Hingham's arrangement was interrupted for a brief period in 1975 when all such disposal by nonmembers was halted due to the MDC's concern regarding burdens on its treatment system.

c. 591, § 9,[7] Hingham voted at an April 24, 1979, town meet-
ing to include the entire town in the North Sewer District; to
authorize its sewer commissioners to apply to the MDC for a
determination that the entire town be admitted to MSD; and
to contract with the MDC for such admission.[8]

In a second vote, the town authorized and instructed its
sewer commissioners to procure an act of the General Court
amending or repealing, in whole or in part, as necessary, St.
1945, c. 591; and any other applicable acts or statutes so that
their provisions would conform to the prior town meeting vote,
and so that the North Sewer District, as enlarged, could be
renamed Hingham Sewer District.[9]

---

[7] Statute 1945, c. 591, § 9, provided in part: "If after the acceptance of
this act by [Hingham] it shall by vote of its inhabitants at any town meeting
request that additional territory, accurately described in the vote, be included
in the north sewer district of the town the [Metropolitan District Commission]
*may, by its determination,* cause such addition to be made" (emphasis
supplied).

[8] The vote provided, in relevant part: "That (1) pursuant to the provisions
of Acts of 1945, Chapter 591, Section 9, there be, and hereby is included,
in the North Sewer District of the Town, as established by Acts of 1945,
Chapter 591, all parts of the Town not presently in said North Sewer District;
and (2) the Board of Sewer Commissioners be, and hereby is, authorized
to apply to the Metropolitan District Commission for a determination that
the entire Town be admitted to and included in the Metropolitan Sewerage
District referred to in Chapter 92 of the Massachusetts General Laws *and
to contract with the Metropolitan District Commission for such admissions*;
and (3) subject to obtaining any necessary approval by the General Court,
the name of the North Sewer District, as added to, be changed to 'Hingham
Sewer District'; and (4) the Board of Sewer Commissioners be, and hereby
is, authorized, to take any other action which said Board deems necessary
or desirable in order to comply with the purpose of this Vote" (emphasis
supplied).

[9] The vote provided: "That, the Board of Sewer Commissioners, in and
for the North Sewer District of the Town of Hingham, as enlarged and
renamed the 'Hingham Sewer District' by the Vote under Article 17 of the
Warrant for the 1979 Annual Town Meeting, be, and hereby is, authorized
and instructed to take any and all action as may be required, in order that
the Town might procure an act of the General Court, amending, or repealing,
in whole or in part, as and if necessary, Acts of 1945, Chapter 591, Acts
of 1946, Chapter 82, Acts of 1955, Chapter 454, Acts of 1958, Chapter
466, and any other applicable acts or statutes so that (1) the provisions of
any such applicable act or statute conform to the Vote under Article 17 of

In June, 1979, Hingham officials formally requested that the entire town be placed in the MDC sewer district and sought a meeting with the MDC staff to discuss the steps necessary to do so. On October 11, 1979, the MDC commissioners voted to approve the admission of Hingham and to instruct the MDC general counsel to "prepare the appropriate documents in the form of contracts for submission to the [Hingham] Board of Selectmen." The MDC staff met with representatives of Hingham to discuss Hingham's application and requested detailed written memoranda regarding the handling of Hingham's septage in relation to the MDC system. By a letter dated June 23, 1980, the MDC notified Hingham's selectmen that the information requested had not been received and that further consideration of Hingham's request would be held in abeyance until all previously requested information was submitted for review. Hingham sent the MDC excerpts from its draft facilities plan; the MDC's general counsel indicated that the data were inadequate. In September, 1980, Hingham sent the same draft plan in its entirety. There is no record of any further submissions by Hingham to the MDC.

In December, 1983, the MDC gave formal written notice to all users of the system, including Hingham, that no further septage from outside the MDC area would be admitted into the MDC system after July, 1984. According to an affidavit submitted by the director of the Authority's sewerage division, this step was taken to reduce the excessive flow into the overburdened Nut Island treatment plant which, because of its overload, was disgorging inadequately treated sewage into Boston Harbor. On December 20, 1983, the Hingham selectmen protested to the MDC.[10]

the Warrant for the 1979 Annual Town Meeting; and (2) the North Sewer District, as enlarged, shall be renamed 'Hingham Sewer District.'"

[10] On June 8, 1984, Hingham filed with the Superior Court the previously referred-to motion for relief from an outstanding order of the judge prohibiting disposal of nonmember septage into the MDC system. Hingham argued that the entire town had been made a member of the MDC system and therefore should be permitted to continue to dispose of all its septage into the MDC system. The trial judge denied Hingham's motion. See note 4, supra.

On October 24, 1984, Hingham sought a declaration from the Department of Environmental Quality Engineering (DEQE) that an emergency condition existed so that MSD could be used for septage disposal from the area outside the North Sewer District. DEQE refused to issue the requested declaration and provided a list of facilities which might be able to accept septage from Hingham. Noting that the disposal sites were recommended only as a short-term solution, DEQE advised Hingham to begin immediately to investigate permanent solutions to its septage disposal problems. Hingham has never constructed its own disposal facility for septage originating from the southern portion of Hingham. Having been denied relief by DEQE, Hingham instituted the present action.

The judge had before him (1) the provisions of G. L. c. 92, St. 1984, c. 372, and all special acts applicable to MSD; and (2) agreed-to documents and evidence reflecting the intent and actions of both parties regarding Hingham's participation in MSD. "If the agreed facts are submitted to the tribunal merely as evidence and in place of ordinary proof, . . . the case stands as does any other case . . . coming by appeal or report from the decision of the trial judge. . . . [A]n appeal from a decision on facts agreed as evidence is treated as raising the question of law whether on all the evidence the verdict or finding was warranted as matter of law. *Ingalls* v. *Hobbs*, 156 Mass. 348 [1892]. *Harmon* v. *Sweet*, 221 Mass. 587, 598 [1915], and cases cited." *Costello* v. *Commissioner of Revenue*, 391 Mass. 567, 569 (1984), quoting *Frati* v. *Jannini*, 226 Mass. 430, 432 (1917).

The judge ruled that, without a contract with the MDC, Hingham could not expect to be a full member. Prior to December, 1984, when the Authority was created to take over the sewer system previously run by the MDC, participation in that system was governed by G. L. c. 92, § 1, or by special act of the Legislature. Both members and nonmembers participated in MSD. Membership was frequently effected by special act and by listing the community in the first sentence of G. L. c. 92, § 1, which directed the MDC to service the sewage disposal needs of the listed entities. Pursuant to G. L. c. 92,

§ 1, the MDC was permitted to extend the system to any municipality; to add any municipality to MSD; to use a part of the MSD system as a municipal sewer; and to acquire a local sewer to become a part of MSD. In each instance, a contract between the MDC and the municipality was required. G. L. c. 92, § 1.

In Hingham's case, St. 1945, c. 591, added a portion of Hingham to MSD and set out the terms and conditions of that membership. This special act provided a mechanism by which the North Sewer District could be enlarged without further action by the Legislature. While Hingham was permitted to apply to expand the district, the MDC had discretion whether such enlargement should occur. St. 1945, c. 591, § 9.

In the absence of any specific language in the special act regarding how such enlargements to the North Sewer District should be effected by the MDC, the judge did not err by looking to G. L. c. 92, § 1, which set forth the manner in which the MDC conducted itself in relation to members and nonmembers of MSD. Whether the requested addition is considered to be an extension of membership in MSD or an extension of its sewer system to a nonmember, a contract would be required.

The judge found that, although a contract was necessary to bring the entire town into MSD, no such contract existed. This finding was amply supported by the evidence. The evidence before the judge indicated that issues remained to be resolved prior to, or as part of, a contract; that Hingham needed to supply information before any agreement could be drafted; that the MDC notified Hingham, on more than one occasion, of the need for such information; and that Hingham never provided the necessary information.

Hingham argues that, if a contract was necessary, it was formed by Hingham's votes to request admission to MSD and by the MDC's vote to approve that request. As noted above, such a theory ignores the statutory requirement of G. L. c. 92, § 1. It fails on contract law grounds as well. Even if the April 24, 1979, town meeting vote is construed as an "offer," the vote had two parts: (1) to request admission; and (2) "to contract

with the Metropolitan District Commission for such admissions." In turn, the MDC's staff recommended, and its commissioners voted, that "appropriate documents in the form of contracts" be prepared. The preparation of a contract, apart from the votes of the town and the MDC, was thus an essential element of both the "offer" and the "acceptance." No such contract was ever executed.

"Where the existence of a contract is in issue, the burden is on the plaintiff to show it was made." *Canney* v. *New England Tel. & Tel. Co.*, 353 Mass. 158, 164 (1967). Hingham failed to carry that burden. There was no error in the judge's determination that no contract had been effected between Hingham and the MDC.

Hingham further contends that St. 1980, c. 235, entitled "An Act changing the name of the North Sewer District of the Town of Hingham to the Hingham Sewer District" changes the list of members in the statutes governing the MDC authority "so that Hingham is a full member." Statute 1980, c. 235, amends St. 1945, c. 591, by adding a new section: "Section 9A. Whenever used in any general or special act the north sewer district of the town of Hingham shall be known as the Hingham sewer district."

The very words of the statute refute Hingham's argument. Statute 1980, c. 235, was an act changing the name of Hingham's district, not the territory covered by it. Where every other member of MSD is listed by a municipality's name, with no limiting word "district," and where the new name again refers to Hingham's "district," it is unreasonable to conclude that the Legislature intended to change the territory, rather than simply the name, of the section of Hingham that is served by MSD. As the judge noted, "Surely if the Legislature had intended to include the whole town it knew how to say so."

The judge concluded finally that the entire town of Hingham was not entitled to be a member of the Authority unless it had been a member of the MDC's MSD when the Authority was created. Section 4 (*a*) and (*c*) of St. 1984, c. 372, empowers the Authority to own, operate, maintain, and manage the MDC's sewer property as it existed on July 1, 1985. Section

4 (*f*) provides that the Authority assume the MDC's contractual obligations relating to the sewer service. Section 8 (*c*) lists the members of the Authority's service area, details the services the Authority was required to provide to members, and defines the other activities the Authority could conduct with members and nonmembers. Unless Hingham had a contractual right to be a member of the MDC's MSD prior to July 1, 1985, which right the Authority would have had to assume, Hingham could not be a member of the Authority's service area unless it was listed in § 8 (*c*).[11] The only reference to Hingham in § 8 (*c*) is to the "north sewer district of Hingham." Since the judge correctly determined that the entire town had not been incorporated into the "north sewer district of Hingham," the entire town was not incorporated into the Authority's service area by § 8 (*c*).

*Judgment affirmed.*

---

[11] We note that the Authority, unlike its predecessor MDC, is not authorized to add communities to its service area by contract on its own. Instead, St. 1984, c. 372, § 8 (*c*), specifically prohibits additions to membership in the service area without prior approval of the Governor and the Legislature.