Peabody N.E., Inc. *v.* Marshfield.

# PEABODY N.E., INC. *vs.* TOWN OF MARSHFIELD.

Bristol. November 6, 1997. - January 13, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Consumer Protection Act,* Trade or commerce. *Contract,* Performance and breach, Damages. *Damages,* Quantum meruit, Liquidated damages, Interest. *Interest.*

A town that contracted with a construction company to construct a waste treatment facility, pursuant to an administrative order imposed by the Department of Environmental Quality Engineering, was not acting in a business context and thus was not engaged in trade or commerce within the meaning of G. L. c. 93A, and a judge of the Superior Court correctly ruled that the company could not recover against the town for alleged violation of that statute. [439-441]

Where a plaintiff seeking recovery on a claim for breach of contract had, without excuse, failed substantially to complete its performance under the terms of the agreement, the plaintiff was not entitled to recover on that claim [441]; nor was the defendant entitled to judgment in its favor on its claim for recovery on the contract, where the defendant was itself in breach of the contract [441-442].

A Superior Court judge, acting pursuant to a master's recommendation, did not err in awarding a plaintiff in a contract dispute damages on a quantum meruit theory, where the plaintiff established substantial and good faith performance of the contract [442]; further, the judge correctly declined to include in the damage award certain overhead expenses that the plaintiff had claimed [443].

In a contract action, the judge correctly concluded that where both the plaintiff and the defendant were independently culpable for the delayed completion of the contract, the defendant was not entitled to liquidated damages on account of the delay. [443-444]

In a contract action in which the parties agreed that the rate of prejudgment interest would be the contract rate of 8.2%, this court concluded that, where multiple breaches of the contract had occurred and no demand had been made, the interest would run from the date of the commencement of the action, pursuant to the provisions of G. L. c. 231, § 6C. [444-446]

At the trial of a contract dispute, the judge did not err in denying the defendant a claimed offset against the damages awarded to the plaintiff [446], or including in the award additional costs incurred by the plaintiff [446], or declining to offset the plaintiff's recovery by the amount of the plaintiff's settlement of a third-party dispute that did not benefit the defendant [447].

CIVIL ACTION commenced in the Superior Court Department on December 3, 1991.

The case was heard by *Richard J. Chin*, J., on a master's report.

The Supreme Judicial Court granted an application for direct appellate review.

*Richard K. Allen* (*Michael B. Donahue* with him) for the plaintiff.

*Philip M. Cronin* (*Robert A. McCall* with him) for the defendant.

LYNCH, J. This matter arose from a contract dispute involving the plaintiff's construction of a grit, septage,[1] and grease handling facility for the defendant town of Marshfield (town). Pursuant to an order of a Superior Court judge, the matter was initially referred to a master for findings of fact and recommended conclusions of law. See Mass. R. Civ. P. 53 (h) (1), as appearing in 386 Mass. 1237 (1982). After receiving the master's final report, the judge ruled that (1) the plaintiff's breach of contract precluded it from recovering on the contract; (2) the plaintiff's breach also precluded an award of prejudgment interest pursuant to G. L. c. 30, § 39K; and (3) the plaintiff could not recover under G. L. c. 93A, because the town was not engaged in "trade or commerce." The judge also recommitted the matter to the master to make further findings regarding the plaintiff's possible recovery in quantum meruit. The master did so in his supplemental report. Based in part on these findings, the judge then ruled that (1) the plaintiff was entitled to recover $266,692 in quantum meruit; (2) the plaintiff's quantum meruit recovery should not include overhead costs; (3) the town was not entitled to liquidated damages stemming from the plaintiff's delay in completing the project; and (4) the plaintiff was entitled, pursuant to G. L. c. 231, § 6C, to prejudgment interest in the amount of 12%, beginning January 1, 1992. We granted the town's application for direct appellate review.

Both parties claim error. The plaintiff primarily contends that the judge erred in (1) rejecting its G. L. c. 93A claim; (2) concluding that it could not recover on the contract; and (3) denying its claim for overhead expenses. The town contends the

---

[1]Septage is "waste from septic systems which are not connected to sewers." *Sewer Comm'rs of Hingham* v. *Massachusetts Water Resources Auth.*, 400 Mass. 455, 457 (1987).

judge erred in (1) failing to enter judgment in its favor; (2) awarding the plaintiff's recovery in quantum meruit; and (3) denying the town's claim for liquidated damages. Both parties claim that the judge's calculation of prejudgment interest was erroneous. We affirm the judgment except for the interest award, which we vacate and remand for further calculations.

1. *Facts.* In December, 1987, the Department of Environmental Quality Engineering (DEQE) (now known as the Department of Environmental Protection) ordered the town to close its landfill septage lagoons and to construct a new treatment facility for septage and grease wastes. Pursuant to this order, the town contracted with an engineering firm, Metcalf & Eddy (M & E), to plan and to design these facilities. In October, 1989, it contracted with the plaintiff to act as general contractor for the project. The contract called for the plaintiff to complete its work by January 27, 1991, but included provisions for extending the deadline.[2] The agreement also provided that, absent an excused extension, the plaintiff would pay liquidated damages in the amount of $400 for each day after January 27, 1991, that the work remained incomplete.

Deemed "primarily an equipment procurement job," the project required the plaintiff first to submit proposed drawings and then, pending M & E's approval, to procure several pieces of equipment for the facility. One such piece of equipment was a vertical progressive cavity pump (pump). The contract between the plaintiff and the town permitted the plaintiff to select any pump model from one of the manufacturers identified in the project specifications. The plaintiff chose a pump made by Robbins & Myers and subsequently submitted several drawings of the pump to M & E.[3] M & E repeatedly rejected the drawings, claiming, among other things, that the Robbins & Myers pump was too tall and contained a platform for which there was no space at the facility. These requirements, however, were not included in the original contract or project specifications. Ultimately, the plaintiff was forced to select another manufacturer's pump, to submit drawings, and to install it at the facility. According to M & E's initial analysis, this installation (when combined with the plaintiff's other work under the

---

[2]The agreement provided that the plaintiff could seek an extension as long as it notified the town within ten days of the beginning of the claimed delay.

[3]This submittal, along with several others, was made months after the scheduled submission date.

contract) made the project 99.87% complete as of August 30, 1991, 215 days after the scheduled completion date. At the town's request M & E then switched methodologies for determining substantial completion, and concluded that the plaintiff had completed less than 99% of the project as of that time. Consequently, the town ordered the plaintiff to perform additional work, which the plaintiff refused to do.[4] Finally, on April 23, 1992, 451 days after the scheduled date of completion, M & E deemed the project substantially complete for purposes of the contract. Because the plaintiff failed to comply with the agreement's time extension provisions, the town assessed liquidated damages in the amount of $180,400 against the plaintiff.

2. *General Laws c. 93A, § 2.* The plaintiff first contends that the judge erred in denying its G. L. c. 93A claim. In his final report, the master concluded that the town was engaged in "trade or commerce" when it contracted with the plaintiff, and that its refusal to declare the project substantially complete on August 30, 1991, constituted an unfair and deceptive trade practice in violation of G. L. c. 93A, § 2. The judge disagreed in part, ruling that c. 93A was inapplicable because the town was not engaged in trade or commerce when it contracted with the plaintiff. We agree with the judge.[5]

Chapter 93A proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. c. 93A, § 2 (*a*). A party is engaging in "trade or commerce," as required under c. 93A, when it acts "in a business context."[6] *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). The statute contains no explicit indication that government entities like the town are subject to its provisions. *United States Leasing Corp.* v. *Chi-*

[4]Under the agreement, the plaintiff was not required to perform extra work after "substantial completion" of the contract.

[5]As a preliminary matter, the plaintiff claims that the judge improperly supplanted the master's findings regarding whether the town was engaged in trade or commerce for purposes of G. L. c. 93A. The master, however, correctly characterized his statement that the town was engaged in trade or commerce as a "Conclusion of Law." "To the extent that the master's ultimate findings are conclusions of law, they are subject to independent judicial review." *Pollock* v. *Marshall*, 391 Mass. 543, 555 (1984).

[6]This, in turn, depends on a number of factors, including "the nature of the transaction, the character of the parties involved, and [their] activities . . . and whether the transaction [was] motivated by business or personal reasons." *Begelfer* v. *Najarian*, 381 Mass. 177, 190-191 (1980).

*copee*, 402 Mass. 228, 232 (1988). This court, however, has repeatedly held that c. 93A does not apply to parties motivated by "legislative mandate, not business or personal reasons." *Poznik* v. *Massachusetts Medical Professional Ins. Ass'n*, 417 Mass. 48, 52 (1994), quoting *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 777 (1992). Cf. *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 25, cert. denied, 118 S. Ct. 599 (1997) (defendant university engaged in trade or commerce in part because it "did not operate under any legislative constraints"). Although not "dispositive of the issue whether c. 93A applies," *Linkage Corp.*, *supra* at 23, a party's status as a nonprofit operation has similarly influenced our analysis, *Poznik*, *supra* at 53; *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993); *Barrett*, *supra* at 776, even where the wrongful behavior related to "an ordinary commercial contract." *United States Leasing Corp.*, *supra* at 231.

In the present case, the town is a government entity that contracted with the plaintiff pursuant to an administrative order imposed by the DEQE. Such orders are enforced with the same power as statutes and, indeed, are the creations of a legislative enactment. G. L. c. 111, §§ 160, 162, 164. 310 Code Mass. Regs. §§ 22.00 et seq. (1994). The threat of a civil administrative penalty or other punishment for violation of the order only underscores the fact that compliance with the order is indeed mandatory.

Furthermore, the town's waste treatment facility is not a profit-making operation.[7] Rather, it merely sustains itself financially through a combination of subsidies from the town itself and "tipping fees" charged to the facility's users. Contrary to the plaintiff's assertions, these fees are designed not to generate profits for the facilities or the town in general, but only to "defray[] the cost of constructing, operating and maintaining" the facility. G. L. c. 111, § 31D. Compare *Linkage Corp.* v. *Trustees of Boston Univ.*, *supra* at 25 (defendant deemed to have engaged in trade or commerce when contracting with plaintiff in part because it was "motivated by a strong desire to benefit" financially from its contract with plaintiff). Given the predominantly public motivation for both the construction of

---

[7]We have previously stated that, in the context of G. L. c. 93A, "[o]ur use of the term 'profit' . . . is meant colloquially, in the sense of revenues that exceed expenses." *Linkage Corp.* v. *Trustees of Boston Univ.*, 425 Mass. 1, 25 n.35, cert. denied, 118 S. Ct. 599 (1997).

the facility and the charging of fees, we conclude that the town was not acting "in a business context" when it contracted with the plaintiff and thus was not engaged in "trade or commerce" as required by G. L. c. 93A. For this reason, we affirm the denial of the plaintiff's c. 93A claim.

3. *Recovery on the contract.* The plaintiff next claims that the judge erred in denying it any recovery on the contract. In his final report, the master recommended that the judge award the plaintiff such recovery. The judge declined to follow this recommendation, concluding instead that the plaintiff's own breach barred recovery on the contract. On appeal, the plaintiff contends that its breach was excused because it was caused exclusively by the town's wrongful conduct. We disagree and affirm the denial of the plaintiff's recovery on the contract.

Contractors like the plaintiff "cannot recover on the contract itself without showing complete and strict performance of all its terms." *Andre* v. *Maguire*, 305 Mass. 515, 516 (1940). Cf. *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 794 (1986). The plaintiff did not satisfy the strict terms of the contract when it failed substantially to complete its performance by January 27, 1991. Moreover, the plaintiff's claim that this failure was somehow excused is unavailing. While it may be true that a breach caused solely by the other party's behavior is generally excused, *Rigs* v. *Sokol*, 318 Mass. 337, 345 (1945), the facts here establish that the plaintiff is also to blame for the delayed completion of the work. The master found that the project's delayed completion was caused by the plaintiff's own "failure to prioritize equipment procurement . . . failure to aggressively manage its schedule with respect to equipment procurement . . . delayed submission of initial shop drawings . . . and delayed resubmission of shop drawings." These delays, moreover, occurred with several major pieces of equipment aside from the delayed procurement of the pumps for which the town was responsible. Indeed, the master found that 40% of the project remained functionally incomplete as of July, 1991 — nearly six months after the contract's deadline. Consequently, it cannot be said that the plaintiff's failure to complete on time was caused solely by the town's wrongful rejection of the pump drawings. For this reason, the plaintiff's delay was not excused and thus recovery on the contract was properly denied.

The town argues that the judge erred in not entering judgment in its favor. Specifically, the town contends that, because

neither the judge nor the master explicitly stated that any of the town's actions constituted a material breach of the contract, a favorable judgment was required. The town's claim, however, ignores the master's findings that (1) the town's rejection of the Robbins & Myers pump constituted a constructive change to the drawings and specifications portion of the contract; and (2) the town's refusal to acknowledge substantial completion as of August 30, 1991, its determination that substantial completion occurred on April 23, 1992, and its recalculation of percentage complete based on the adjusted contract price rather than on the original contract price "were [actions] made in bad faith, capriciously and arbitrarily." It likewise ignores the fact that the judge denied liquidated damages because "[the town] contributed to the delay of the project." Thus, contrary to the town's assertions, both the master and the judge determined that the town was in breach. We agree and conclude as a matter of law that the town was not entitled to judgment in its favor.

4. *Recovery in quantum meruit.* Although he denied recovery on the contract itself, the judge, acting pursuant to the master's recommendation in his supplemental report, did award the plaintiff damages under a quantum meruit theory. On appeal, the town claims that this was erroneous because the plaintiff's breach of the contract was not in good faith. We disagree.

A contractor "may recover in quantum meruit," if he can prove both substantial performance of the contract and an endeavor on his part in good faith to perform fully. *J.A. Sullivan Corp.* v. *Commonwealth, supra* at 796, quoting *Andre* v. *Maguire, supra* at 516. Generally, "an intentional departure from the precise requirements of the contract is not consistent with good faith in the endeavor fully to perform it." *J.A. Sullivan Corp.* v. *Commonwealth, supra* at 797, quoting *Andre* v. *Maguire, supra.* Here, the master expressly found that the plaintiff's failure to complete the project by January 27, 1991, was an unintentional departure from the contract's requirement. Indeed, he found that the plaintiff's delayed performance was at least "in part" caused by the town's improper rejection of the pumps. Pursuant to Mass. R. Civ. P. 53 (h) (1), we must accept these findings of fact unless we conclude that they are "clearly erroneous, mutually inconsistent, unwarranted by the evidence before the master as a matter of law or are otherwise tainted by error of law." Since we do not so conclude, the judge's award of damages in quantum meruit is affirmed.

5. *The plaintiff's overhead expenses.* In calculating the plaintiff's quantum meruit recovery, the judge declined to include certain overhead expenses the plaintiff incurred from August 30, 1991, to April 23, 1992. The plaintiff now argues that this was error.

In determining a quantum meruit recovery, the proper focus is "the value of the services rendered . . . or [] the fair value of what the defendant has received." *Ryan* v. *Ryan*, 419 Mass. 86, 94 n.12 (1994). See *J.A. Sullivan Corp.* v. *Commonwealth, supra* at 797; 12 S. Williston, Contracts § 1477, at 261 n.18 (3d ed. 1970). In the present case, the plaintiff seeks to include in the quantum meruit recovery overhead costs incurred both in the field and at its home office from August 30, 1991, to April 23, 1992. These costs, however, did not directly confer any value or benefit on the town. Rather, as the traditional definition of the term "overhead" suggests, the plaintiff was merely incurring "business expenses . . . not chargeable to a particular part of the work or product." Webster's New Collegiate Dictionary 841 (9th ed. 1991). Accordingly, such costs do not belong in any quantum meruit award.

6. *The town's liquidated damages.* The town also contends that the judge erred when he determined that the town was not entitled to liquidated damages for the plaintiff's delayed completion of the project.[8]

Liquidated damages are inappropriate here. This court has held that, where both the plaintiff (contractor) and the defendant (owner) were to blame for the plaintiff's delayed completion of a project, the defendant was not entitled to liquidated damages.

---

[8]As a preliminary matter, the town contends that, because the plaintiff failed timely to object to the master's final report, it waived any challenge on appeal to the master's liquidated damages award to the town. Under Mass. R. Civ. P. 53 (h) (2), as appearing in 386 Mass. 1237 (1982), a party's failure to file timely objections to a master's subsidiary factual findings precludes that party from challenging those findings. In the present case, however, the judge did not tamper with the master's findings of fact, but instead disagreed with his conclusion of law that liquidated damages were warranted. Moreover, the judge's refusal to award liquidated damages was correct as a matter of law. In these circumstances, "[w]e examine the contents of the confirmed report to determine whether the conclusions reached in the final judgment are 'such as the law requires upon the facts found by the master and proper inferences therefrom.' " *Antioch Temple, Inc.* v. *Parekh*, 383 Mass. 854, 863 (1981), quoting *Foot* v. *Bauman*, 333 Mass. 214, 219 (1955).

*Morgan* v. *Burlington*, 316 Mass. 413, 418 (1944).[9] As previously noted, the plaintiff and the town in the present case were independently culpable for the delay in substantial completion until August 30, 1991. Moreover, it appears that the town's refusal to deem the project substantially complete in August, 1991, single handedly caused the further delay in actual completion until April 23, 1992. Hence, under *Morgan* and other relevant authority, liquidated damages are improper with respect to both delays. See 5 S. Williston, Contracts § 789, at 764 (3d ed. 1961) ("Where both parties are at fault a party who has contributed to the breach cannot recover a sum stipulated as liquidated damages, even though performance of the contract is continued, and the other party thereafter is at fault").

7. *Interest calculations.* In his final report, the master awarded the plaintiff prejudgment interest at 8.2% for the "net [c]ontract balance" of $180,692, pursuant to G. L. c. 30, § 39K. Its accrual date was November 3, 1991. The master also found that, under G. L. c. 231, § 6C, the plaintiff was entitled to 12% interest for the "increased field and home office overhead amount of $388,644." The accrual date here was January 1, 1992, "being the approximate midpoint of when those [overhead] costs were incurred, i.e., 31 August 1991 through 27 April 1992." In his first memorandum of decision and order, the judge stated only that no award of interest under § 39K was warranted because the plaintiff's damages were in quantum meruit, not on the contract itself. Then, in his supplemental report, the master found that "[i]nterest at the statutory rate of 12% pursuant to M.G.L. c. 231 § 6C is to be applied to the net amount due and owing to Peabody of $180,692.00, commencing as of 1 January 1992." Finally, in his second memorandum of decision and order, the judge affirmed the master's supplemental report, concluding that under § 6C the plaintiff was entitled to quantum meruit damages "in the amount of $266,692 plus 12% interest, commencing as of January 1, 1992 until paid."[10]

On appeal, both parties agree that the proper rate of interest

---

[9]This court concluded in that case that "the delay, *not having been caused by the fault or neglect of the plaintiff*, would not establish any right in the town to claim or withhold anything by way of liquidated damages" (emphasis added). *Morgan* v. *Burlington*, 316 Mass. 413, 418 (1944). Because the plaintiff in the present case was partially at fault, any reliance on *Morgan* by it is misplaced.

[10]The amount awarded, $266,692, represents the quantum meruit award of the master, plus $86,000 which had previously been excluded by the master as

is 8.2%, but differ on whether prejudgment interest is appropriate and, if so, the date on which it accrues. The plaintiff primarily contends that § 6C mandates an interest award from November 3, 1991. In contrast, the town claims that, because the plaintiff "never submitted a claim . . . based on quantum meruit," no recovery under § 6C is warranted.[11]

General Laws c. 231, § 6C, governs the calculation of prejudgment interest in contract actions. It provides in part:

> "In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added . . . *at the contract rate*, if established, or at the rate of twelve per cent per annum, *from the date of the breach or demand.* If the date of the breach or demand is not established, interest shall be added . . . *from the date of the commencement of the action*" (emphasis added).

In the present case, no issue is presented to this court regarding the appropriate rate of interest to be applied under § 6C. Both parties agree that 8.2% is the appropriate interest rate under the terms of their contract. Rather, the primary issue lies in the date from which the interest accrues. Under § 6C, interest accrues "from the date of the breach or demand [if] established." Where no demand is made and multiple breaches occur, however, interest must accrue "from the date of the commencement of the action." There is no evidence here that any demand was made by the plaintiff. Furthermore, each party was responsible for at least one breach of the contract: (1) on January 3, 1991, when the town rejected the second formal Robbins & Myers pump submittal when such pump complied with the drawings and specifications; (2) on August 30, 1991, when the town refused

---

the town's liquidated damages award. As discussed above, the judge rejected the town's claim for liquidated damages.

[11]Both parties appear to agree that, because the plaintiff did not recover on the contract, an interest award under G. L. c. 30, § 39K, is improper. Assuming that § 39K applies to this project, we agree. As the Appeals Court concluded in *Acme Plastering Co.* v. *Boston Hous. Auth.*, 21 Mass. App. Ct. 669, 677 (1986), prejudgment interest under § 39K applies only where the contractor's recovery is on the contract itself. "Had the Legislature intended to provide for recovery of penalty interest where the payment was for work not done under the terms of the contract . . . it could simply have done so." *Id.* at 676.

to declare the project substantially complete; and (3) on January 27, 1991, when the plaintiff failed to complete the project. In this context the date of breach was not established and prejudgment interest under § 6C must accrue from "the date of the commencement of the action," or December 3, 1991.

In short, the plaintiff is entitled to prejudgment interest at the rate of 8.2% from December 3, 1991. To the extent that the judge's order is inconsistent with this conclusion, it is vacated.

8. *The town's other claimed losses.* The town makes several other claims regarding the judge's award to the plaintiff. First, the town claims that the plaintiff's recovery should be offset in the amount of $45,000, for engineering work the town performed in preparation for the plaintiff's planned installation of three "gate valves" at the facility.[12] The plaintiff never actually installed these valves because, as the master found, it devised a new method under which the valves were unnecessary. The master found, as a matter of fact, that the town, through M & E, approved the new method without "a change order deleting the cost of the three gate valves." Because these findings were not clearly erroneous, see Mass. R. Civ. P. 53, *Pollock* v. *Marshall*, 391 Mass. 543, 554 (1984), and cases cited, we will not disturb the denial of the $45,000 offset.

Second, the town claims that the judge erred in including in the plaintiff's quantum meruit award $23,092 for additional costs the plaintiff incurred in purchasing a pump to replace the rejected Robbins & Myers pump.[13] We disagree. Unlike the plaintiff's overhead costs, the amount spent by the plaintiff to purchase the replacement pump directly benefited the town. *Ryan* v. *Ryan*, 419 Mass. 86, 94 n.12 (1994). Moreover, the plaintiff incurred this amount only because the town had wrongfully rejected the Robbins & Myers pump. Consequently, the judge did not err in including $23,092 in the plaintiff's quantum meruit award.

---

[12]The master stated that the town claimed that its $45,000 loss stemmed from engineering work it performed in preparation for the plaintiff's installation of the gate valves. On appeal the town does not argue that, because the valves were never installed, their cost should have been deducted from the plaintiff's quantum meruit award. Consequently, we must address only the claims presented.

[13]According to the master's final report, the plaintiff paid $59,092 for the substitute pump, and received a credit from Robbins & Myers for $36,000 for the cancellation of the plaintiff's order. Thus, the net additional costs incurred by the plaintiff were $23,092.

Third, the town complains that the judge erred in declining to offset the plaintiff's recovery by $70,000 — the amount the plaintiff received to settle a dispute with Robbins & Myers. An offset of this kind is appropriate only where the plaintiff's settlement constitutes "compensation for the same losses which [it] seek[s] to recover from the [town]." *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 10 (1982). In the present case, the plaintiff is seeking to recover from the town, in quantum meruit, the costs it incurred for the labor and materials accruing to the town. The record does not demonstrate that the amount of the Robbins & Myers settlement was for anything that benefited the town. Consequently, no offset was required.

9. *Conclusion.* In total, the plaintiff is entitled to recover from the town a quantum meruit award of $266,692.[14] It is also entitled to collect prejudgment interest amounting to 8.2% annually for the town's failure to pay this amount, beginning on December 3, 1991.

The case is remanded to the Superior Court for the entry of a judgment in the amount of $266,692 plus prejudgment interest from December 3, 1991.

*So ordered.*

---

[14]We reach this figure by subtracting the town's previous payments to the plaintiff, $3,198,806, and the town's previous payments of $4,000 for the plaintiff's electricity costs from the value of material and labor supplied by the plaintiff (and the plaintiff's other expenses), $3,469,498.