Sikora, J.
RULING
The defendant Massachusetts Bay Transportation Authority (“MBTA”) moves pursuant to Mass.R.Civ.P. 12(b)(6) to dismiss defendant Plymouth & Brockton Street Railway Company’s (“P&B”) cross claim against it. This litigation arises out of MBTA’s implementation of the Old Colony Railroad Rehabilitation Project. As a result of that project, MBTA entered into a 13.7 million dollar settlement agreement with SEMPCA, an organization consisting of six transportation companies adversely affected by the Old Colony Project. Approximately two years and four months after MBTA had entered into the settlement agreement with SEMPCA, a seventh transportation company, JBL, filed this action. The defendant P&B has cross claimed against the MBTA for negligent misrepresentation, breach of the implied covenant of good faith and fair dealing and violations of G.L.c. 93A. For the reasons discussed below, the court ALLOWS MBTA’s motion to dismiss.
REASONING
Background
The following undisputed material facts emerge from the summary judgment record.
Approximately five years ago, in 1995, the MBTA began the Old Colony project (“project”) to restore commuter rail service to twenty-seven communities in southeastern Massachusetts. When the project began several private bus companies were servicing the area.
Pursuant to G.L.c. 161A, §14, ”[i]f the authority shall operate ... a mass transportation service or route which is not substantially similar to a service or route previously operated by the authority . . . and which is in competition with a pre-existing mass transportation service or route provided by a private company, and if such competition causes substantial economic damage to such company, the company may file a claim for relief with the authority within six months of the commencement of such new operation.” The MBTA anticipated that the implementation and operation of the project might adversely affect all six SEMPCA members and, thus, trigger the MBTA’s obligations under G.L.c. 161A, §14 and the Federal Transit Act. Accordingly, MBTA negotiated with SEMPCA, acting through its member companies, to resolve any G.L.c. 161A, §14 and Federal Transit Act claims. As a result of these negotiations, MBTA and SEMPCA entered into an agreement on August 5, 1995, in which MBTA tendered a lump sum payment of 13.7 million dollars in exchange for releases of any § 14 or Federal Transit Act claims. Specifically, Section 7(b) of the agreement provides:
SEMPCA hereby represents and warrants that, to the best of its knowledge, there are no private bus companies (other than the member carriers identified in Section (2) of this Agreement) that, as of the Date of this Agreement, operate fixed route public transportation services in the Service Area using vehicles with a capacity of over 25 passengers. If any carrier described in the preceding sentence makes claims against the MBTA, after the Date of this Agreement, for a subsidy or damages based upon or in any way relating to the operation of Project Services, SEMPCA hereby agrees (1) to pay any such subsidy or damages and related costs and to otherwise fully indemnify and hold harmless the MBTA for any such subsidy, damages, and related costs; or (2) at the direction of the MBTA, to permit such carrier to become a member of SEMPCA and to receive an appropriate proportion of the Settlement Amount provided under Section 4 of this Agreement, with such portion to be determined in accordance with the formula or other method adopted by SEMPCA for the allocation of the Settlement Amount among its members.
The lump sum payment was to be divided proportionally among SEMPCA’s members.
On January 27, 1998, approximately two years and four months after MBTA had entered into the settlement agreement with SEMPCA, JBL Bus Lines, Inc. (“JBL”) notified the MBTA that, as of the date of the agreement, it was entitled to monies under Section 14. On November 3, 1999, the MBTA in turn informed SEMPCA that it intended to invoke Section 7(b) of the agreement to direct that JBL become a member and receive an appropriate proportion of the settlement monies. SEMPCA refused and continues to refuse to pay any monies to JBL on the grounds that Section 7(b) is unenforceable and void. On November 16,2000, the defendant P&B cross claimed against the MBTA upon counts for negligent misrepresentation, breach of the implied covenant of good faith and fair dealing and violations of G.L.c. 93A. The MBTA has responded with the present motion.
Discussion
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the plaintiffs favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991).[1] “The plaintiff need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim.” Bell v. Mazza, 394 Mass. 176, 184 (1985). “[D]ismissals on the basis of pleadings, before facts have been found, are discouraged.” Gennari v. City of Revere, 23 Mass.App.Ct. 979, 980 (1987) (citing Fabrizio v. Quincy, 9 Mass.App.Ct. 733, 734 (1980) (citation omitted)). The complaint must be accorded a “generous reading.” New England Insulation Co. v. General Dynamics *488 Corp., 26 Mass.App.Ct. 28, 29 (1988). However, as we shall see, none of these favoring canons can save P&B’s cross claim.
I. Negligent misrepresentation.
P&B, in Count I of its cross claim against MBTA, alleges that MBTA misled it by negligently omitting to mention JBL Bus Lines, Inc. in its environmental impact studies reports.[2] The environmental impact study, P&B alleges, was prepared by MBTA in connection with its consideration of viable alternatives to the restoration of rail services. P&B claims that it relied upon the fact that no other potential carriers had appeared in the environmental study as part of its decision to join the SEMPCA-MBTA agreement.
Two types of misrepresentations are actionable in Massachusetts: intentional and negligent. J.R. Nolan & L.J. Sortorio, Tort Law §143 (1989). In an action for intentional misrepresentation, a plaintiff must prove “that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon such representation as true and acted upon it to his damage.” Barrett Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963) (quoting Kilroy v. Barron, 326 Mass. 464, 465 (1950)). “In order to recover for negligent misrepresentation . . . plaintiff must prove that the defendant (1) in the course of his business, (2) supplied] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and [that it] (6) . . . fail[ed] to exercise reasonable care or competence in obtaining or communicating the information.” Nota Constr. Corp. v. Keyes Assocs., Inc., 45 Mass.App.Ct. 15, 19-20 (1998); see Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587-88 (1996). Ordinarily a claim for negligent misrepresentation is one for a jury, unless the undisputed facts are so clear as to permit only one conclusion. Fox, 41 Mass.App.Ct. at 588. Justifiable reliance on a false statement of fact is a necessary element of a misrepresentation claim. Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 257 (1999).
Here, P&B’s claim for negligent misrepresentation fails as a matter of law because it does not, and apparently cannot, allege that MBTA supplied P&B the environmental impact study as part of the formation of the SEMPCA agreement. The MBTA did not produce the environmental study for purposes of the SEMPCA agreement. It has no duty to P&B stemming from the report.[3] Thus, MBTA’s motion to dismiss Count I of P&B’s cross claim shall be allowed.
II. 93A.
P&B claims also that MBTA violated G.L.c. 93A when it failed to disclose that JBL was a qualified public transportation provider under Section 14 prior to entering into the settlement agreement. The MBTA, however, maintains that it is not liable under G.L.c. 93A in this instance because it is not engaged in trade or commerce. As a matter of law, it is correct.
“It is generally accepted that the Commonwealth cannot be impleaded in its courts except where an act of the Legislature clearly manifests its consent.” Bretton v. State Lottery Comm’n, 41 Mass.App.Ct. 736, 738 (1996). “Chapter 93A contains no explicit indication that governmental entities are to be liable under its provisions.” U.S. Leasing Corp. v. Chicopee, 402 Mass. 228, 232 (1988) (school committee, in leasing a computer from plaintiff, not engaged in trade or commerce). However, even if this court assumes that the MBTA would qualify as a “person” under the statute, the Chapter 93A claim must fail because the MBTA was not engaged in “trade” or “commerce.”
“A party is engaging in ‘trade or commerce,’ as required under c. 93A, when it acts ‘in a business context.’ ” Peabody N.E., Inc. v. Marshfield, 426 Mass. 436, 439 (1998) (quoting Lantner v. Carson, 374 Mass. 606, 611 (1978)). In determining whether parties are engaged in trade or commerce, a court may consider the following factors: “(1) the nature of the transaction, (2) the character of the parties, (3) the activities participated in, and (4) whether the transaction was motivated by business or personal reasons.” Planned Parenthood Federation of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 491 (1986). Other relevant factors include, “whether similar transactions have been undertaken in the past, . . . and whether the participant played an active part in the transaction.” Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 24 (1997).
In the light of the relevant factors, the MBTA is not a “person” engaged in “trade or commerce” when it is following a legislative directive pursuant to G.L.c . 161, §14. See Peabody N.E., Inc., 426 Mass. at 439 (G.L.c. 93A does not apply to parties motivated by “legislative mandate, not business or personal reasons”). Upon the present pleadings, P&B cannot show that MBTA acted outside of its legislative mandate and was instead motivated by business or personal reasons. All of P&B’s allegations arise from the settlement formed pursuant to G.L.c. 161A, §14. The settlement was a legislatively mandated duty of the MBTA. None of P&B’s allegations, if shown to be true, would permit a reasonable inference that it “was engaged in trade or commerce when it entered into the arrangement [or] when it took the actions of which the [plaintiff] now complains.” Lafayette Place Assoc. v. Boston Redevelopment Auth., 427 Mass. 509, 535 (1998).
P&B cannot argue that the allegedly unfair or deceptive acts or practices lie outside the scope of the MBTA’s statutory authority and thus become subject to regulation under G.L.c. 93A. No matter how allegedly unfair or deceptive MBTA’s practices may have been, they were done “wholly in pursuit of the legislatively prescribed mandate” pursuant to G.L.c. 161A, §14. Id. at 535. Thus, the allegations in the plaintiffs *489 complaint relating to Count II cannot lead to a conclusion that MBTA acted for business or personal reasons. Here, the MBTA’s activities are driven by legislative mandate, not business or personal objectives. See Bretton, 41 Mass.App.Ct. at 738. The MBTA’s actions in obedience to Section 14 were public and governmental. It was not acting “in a business context” when it contracted with SEMPCA or P&B. Accordingly, the court grants the MBTA’s motion to dismiss Count II of the P&B cross claim against it.
III. Breach of the implied covenant of good faith and fair dealing.
Contrary to P&B’s assertion, MBTA did not violate the implied covenant of good faith and fair dealing “[b]y forcing SEMPCA and its members to agree to §7(b) of the SEMPCA agreement.” In Massachusetts, the implied covenant of good faith and fair dealing is applicable to every contract. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991) (citing Warner Ins. Co. v. Comm’r of Ins., 406 Mass. 354, 362 n. 9 (1990)). “(N)either party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.” Anthony’s Pier Four, 411 Mass. at 471-72 (quotations omitted). “A duty of good faith and fair dealing is implicit in the performance of a contract, even if not stated . . . That principle presupposes the formation of a contract under which the parties are to perform their obligations in good faith, in contrast to the far more inchoate status of parties in the courtship dance phase of contract formation.” Schwanbeck v. FederalMogul Corp., 31 Mass.App.Ct. 390, 396 n. 6 (1991) (citations omitted) (emphasis supplied), rev’d on other grounds, 412 Mass. 703 (1992).
Here, the allegation that the MBTA acted in bad faith during contract negotiations does not state a claim upon which relief may be granted because any act or omission occurred in negotiation and not in the performance of the contract. Because P&B does not allege any wrongdoing during the course of performance, Count III, alleging breach of the covenant of good faith and fair dealing, shall be dismissed.
CONCLUSION
For the reasons stated, the MBTA is entitled to dismissal with prejudice of P&B’s entire cross-claim. The court urges P&B and any other parties contemplating unsupported claims or defenses to remain mindful of the financial sanctions authorized to a prevailing party at the conclusion of litigation by G.L.c. 231, §6F.
ORDER FOR JUDGMENT
Judgment of dismissal with prejudice shall enter in favor of the defendant MBTA and against the codefendant Plymouth and Brockton Street Railway Company upon all counts of the cross claim of Plymouth and Brockton Railway Company.

 Rule 12(b)(6) applies as well to counterclaims, cross claims, and third-party claims.

 P&B claims that Count I is a “simple negligence” claimnot merely a claim for negligent misrepresentation. After review of the complaint, it is apparent that Count 1 indeed is asserting a claim for negligent misrepresentation alone.

 P&B’s misrepresentation claim fails also because it cannot allege that it reasonably relied on any alleged false statement of fact by defendants. P&B is presumed to have had knowledge of the terms of the agreement and thus may not assert that it justifiably relied on any fact that varies or contradicts the terms of the agreement. The agreement specifically states the following:
SEMPCA hereby represents and warrants that, to the best of its knowledge, there are no private bus companies (other than the member carriers identified in Section (2) of this Agreement) that, as of the Date of this Agreement, operate fixed route public transportation services in the Service Area using vehicles with a capacity of over 25 passengers. If any carrier described in the preceding sentence makes claims against the MBTA, after the Date of this Agreement, for a subsidy or damages based upon or in anyway relating to the operation of Project Services, SEMPCA hereby agrees (1) to pay any such subsidy or damages and related costs and to otherwise fully indemnify and hold harmless the MBTA for any such subsidy, damages, and related costs; or (2) at the direction of the MBTA, to permit such carrier to become a member of SEMPCA and to receive an appropriate proportion of the Settlement Amount provided under Section 4 of this Agreement, with such portion to be determined in accordance with the formula or other method adopted by SEMPCA for the allocation of the Settlement Amount among its members.
This language specifically contemplates that other carriers might exist; and SEMPCA assumed the responsibility for such a risk. See Central Massachusetts Television, Inc. v. Amplicon, 930 F.Sup. 16, 25 (D.Mass. 1996). A risk explicitly stated in a written contract and knowingly assumed by a party cannot constitute a misrepresentation to that party. Accordingly, reliance is not reasonable on that basis.